IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**BRAD PAUL SMITH**  **PLAINTIFF**
ADC #660448

V.    NO. 3:24-cv-9-DPM-ERE

**THOMAS HURST,** *et al.*    **DEFENDANTS**

## ORDER

*Pro se* plaintiff Brad Paul Smith has moved for the Court to reconsider its decision denying his motion for leave to proceed in forma pauperis (IFP). *Doc. 4*. Mr. Smith is a three-striker, which he does not dispute. However, Mr. Smith argues he has satisfied the imminent danger exception to the three strikes rules. Mr. Smith re-alleges that: (1) in May 2023, Defendant Felecia Bell called him a "snitch" in front of other inmates; (2) on October 11, 2023, other inmates attacked him; (3) on October 19, 2023, other inmates stabbed him; (4) in November 2023, other inmates attacked him; and (5) on December 27, 2023, other inmates carrying "locks on strings" and homemade shanks" surrounded hm in his cell. *Id. at 2*.

This Order grants Mr. Smith's motion to reconsider, allows him to proceed IFP, identifies deficiencies (or problems) in Mr. Smith's complaint, and gives Mr. Smith the opportunity to file an amended complaint.

1.  **Mr. Smith's Complaint and Motion to Reconsider**

Mr. Smith's complaint alleges that, on May 28, 2023, Defendant Felicia Bell told other inmates that he was a "snitch." *Doc. 2 at 5*. He explains that he notified Defendants Pigford, Thomas Hurst, Claudia Harris, Cantrell, Baker, Harmon, and Dunagon about Defendant Bell's comment and the risk posed to his safety. After Mr. Smith was released from segregation, he was moved into an open barracks. At that time, Mr. Smith states that he began "having problems and requested to be moved barracks [be]cause of staff spreading rumors again saying [he was] a 'snitch.'" *Id*. He again notified the same individuals of the risk posed to his safety.

On October 11, 2023, other inmates "jumped" Mr. Smith. He explains that those inmates stated, "[k]eep your mouth shut snitch or we'll kill you." *Id. at 6*.

On October 19, 2023, Mr. Smith got into an altercation with another inmate who he identifies as an Aryan. *Id*. That inmate stabbed Mr. Smith twice and accused him of "snitching." *Id*. ADC officials the moved Mr. Smith to 2 barracks. He alleges that the inmate who stabbed him was assigned to the same hallway. Once he informed staff about the location of the other inmate, ADC officials moved him to "the other side." *Id*.

On November 17, 2023, ADC officials moved Mr. Smith to 5 barracks where Defendant Bell allegedly started the rumor that Mr. Smith was a "snitch." *Id*. A couple of days later, Mr. Smith alleges that several inmates again "jumped" him

and called him a "snitch." *Id*. At that time, Defendants Baker and Dunagan were notified about the incident and stated "they couldn't do nothing[sic]." *Id*.

In his motion to reconsider, Mr. Smith explains that, on December 27, 2023, other inmates surrounded him in his cell carrying locks and homemade shanks. *Doc. 4 at 2*. Mr. Smith states that he "told staff again [but] to no avail." *Id*.

Mr. Smith claims that all named Defendants have failed to protect him and have been deliberately indifferent to his safety. He sues Warden Thomas Hurst, Deputy Warden Claudia Harris, Sergeant Felicia Bell, Captain Baker, Classification Officer Pigford, Lieutenant Harmon, Captain Cantrell, Lieutenant Dunagan, and Deputy Director Warden Straughn each in both his or her individual and official capacities seeking monetary damages and unspecified "injunctive relief." *Doc. 2 at 8*.

Based on these allegations, the Court concludes that Mr. Smith has arguably satisfied the imminent danger exception to the three-strikes rule. See *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998) (concluding that the exception was satisfied when an inmate alleged that prison officials continued to place him near his inmate enemies, despite two prior stabbings); *Martin v. Shelton*, 319 F.3d 1048 (2003) (stating that the imminent danger "exception focuses on the risk that the conduct complained of threatens continuing or future injury, not whether the inmate deserves a remedy for past conduct." )  Accordingly, the Court grants Mr. Smith's

3

motion to reconsider and will allow him to proceed IFP at this time.

2. **<u>In Forma Pauperis Application:</u>**

A review of the documents submitted by Mr. Smith demonstrates that he qualifies to proceed IFP.

Based on Mr. Smith's prison trust account information, the Court will not assess any initial partial payment. However, his custodians are instructed to collect the $350.00 filing fee by deducting monthly payments equal to 20% of the preceding month's income credited to Mr. Smith's prison trust account each time the amount exceeds $10.00. The entire $350.00 filing fee must be paid, even if the lawsuit is dismissed before trial. Mr. Smith's custodian should clearly identify the monthly payments by the name and number of this case.[1]

3. **<u>Deficiencies (Problems) in Current Pleadings</u>**

As explained below, in its current form, Mr. Smith's complaint fails to state a plausible constitutional claim for relief against many of the named Defendants. Rather than screen the complaint and recommend the dismissal of many of Mr. Smith's claims, the Court will postpone the screening process[2] to give Mr. Smith the

---

[1] *Brad Paul Smith v. Thomas Hurst, et al.,* E.D. Ark. No. 3:24-cv-00009-DPM-ERE.

[2] Screening is mandated by the Prison Litigation Reform Act, which requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). When making this determination, the Court must accept the truth of the factual

opportunity to file an amended complaint clarifying his constitutional claims and correcting the deficiencies in his current complaint.

Accordingly, in his amended complaint, Mr. Smith should clarify the events for which he is seeking a remedy as opposed to claims related to any ongoing risk of physical harm.

### A. Unrelated Claims

As discussed above, Mr. Smith's complaint references events that occurred in May 2023, October 2023, November 2023, and December 2023. It appears unlikely that these events are sufficiently related such that he may pursue claims arising from each of these events in one lawsuit.

Mr. Smith may not pursue multiple claims that are factually and legally unrelated in a single lawsuit. See FED. R. CIV. P. 20(a)(2) (multiple defendants may be joined in one lawsuit only if the claims against them arise "out of the same transaction, occurrence, or series of transactions or occurrences," and involve "any question of law or fact common to all defendants"). In other words, Mr. Smith may not pursue in one lawsuit claims involving different defendants and different events. Instead, Mr. Smith must choose which related claims he wishes to pursue in this

---

allegations contained in the complaint, and it may consider the documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

case.

### C.   Defendant William Straughn

In his complaint, Mr. Smith sues Deputy Director Warden Straughn. *Doc. 2 at 3*. However, Mr. Smith fails to allege that Defendant Straughn personally participated in any alleged unconstitutional conduct or had direct responsibility for any alleged constitutional violation. Instead, Mr. Smith appears to seek to hold Defendant Straughn liable based on his supervisory position at the ADC.

Established law holds that a supervisor may not be held vicariously liable under § 1983 for the constitutional violations of a subordinate. *Ashcroft*, 556 U.S. at 676 (holding that "vicarious liability is inapplicable to . . . § 1983 suits"); *Saylor v. Nebraska*, 812 F.3d 637, 644-45 (8th Cir. 2016) (because a supervisor cannot be held vicariously liable for the constitutional violations of a subordinate, prisoner must "show that the supervisor personally participated in or had direct responsibility for the alleged violations" or "that the supervisor actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts").

In its current form, Mr. Smith's complaint fails to state a constitutional claim for relief against Defendant Straughn.

### 4.   Guidelines for Filing Amended Complaint:

Mr. Smith has thirty days to file a third amended complaint. If Mr. Smith files an amended complaint, he should specifically: (1) include only those claims related

6

to any ongoing risk of harm to his safety; (2) identify and name as Defendants those individuals who are aware that his continued incarceration poses an ongoing risk of harm to his safety;[3] (3) state how those individuals have acted with deliberate indifference to his safety; and (4) state the injury he suffered as a result of each Defendant's unconstitutional conduct.[4]

Mr. Smith's amended complaint, if filed, will supersede or replace the current complaints. See *In re Atlas Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) (an amended complaint supersedes an original complaint and renders the original complaint without legal effect). So, Mr. Smith should make sure that his amended complaint includes all allegations relevant to the claim(s) he wants to pursue in this lawsuit. Also, Mr. Smith should not rely upon, or incorporate by reference, any allegations made in his other complaints. In other words, Mr. Smith's amended complaint, if filed, will stand alone.

Finally, in his amended complaint, Mr. Smith need only include a "short and plain statement" showing that he is entitled to relief, with factual allegations that are "simple, concise, and direct." FED. R. CIV. P. 8(a)(1) & (d). At this stage, there is no need to identify witnesses or to describe evidence that he may rely on later to prove

---

[3] "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." See *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007).

[4] If the Court later determines that Mr. Smith's amended complaint relates solely to past harm, the Court may revoke Mr. Smith's IFP status.

his claim.

### 5. **Conclusion:**

For the reasons explained above,

IT IS THEREFORE ORDERED THAT:

1. Mr. Smith's motion to reconsider (*Doc. 4*) is GRANTED.

2. Mr. Smith may proceed IFP.

3. The Clerk of the Court is directed to send a copy of this Order to the Arkansas Division of Correction Trust Fund Centralized Banking Office, P.O. Box 8908, Pine Bluff, Arkansas 71611; the Arkansas Division of Correction Compliance Division, P.O. Box 20550, Pine Bluff, Arkansas 71612; and the Warden of the Grimes Unit, 300 Corrections Drive, Newport, Arkansas 72112.

4. Mr. Smith may file an amended complaint within thirty (30) days of the entry of this Order.

5. If Mr. Smith fails to file an amended complaint, the Court will screen the original complaint (*Doc. 2*), which is likely to result in the dismissal of some of Mr. Smith's claims.

6.  The Clerk is instructed to provide Mr. Smith a blank 42 U.S.C. § 1983 complaint form, along with a copy of this Order.

SO ORDERED 8 February 2024.

_____
UNITED STATES MAGISTRATE JUDGE